UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

FATAI OKUNOLA,
    a/k/a Kojo Badu Frank,
OLUWASEYI AYOBAMI ADEOLA,
IJEOMA OMOLOLA ADEOLA, and
CORY MCDOUGAL,
    a/k/a Cory Haywood,

        Defendants.

_____/

**INDICTMENT**

The Grand Jury charges:

## COUNT 1
(Conspiracy to Commit Mail and Wire Fraud)

From a date unknown to the Grand Jury but beginning in at least 2015 and continuing up to and including December 2023, in the Western District of Michigan and elsewhere, the defendants,

**FATAI OKUNOLA,
a/k/a Kojo Badu Frank,
OLUWASEYI AYOBAMI ADEOLA,
IJEOMA OMOLOLA ADEOLA, and
CORY MCDOUGAL,
a/k/a Cory Haywood,**

knowingly combined, conspired, confederated, and agreed with each other and others known and unknown to the Grand Jury, including individuals in Nigeria and other parts of Africa, to commit the offenses of mail and wire fraud, in violation of Title 18, United States Code, Sections 1349, 1341 and 1343.

1

**INTRODUCTION**

1.      FATAI OKUNOLA is a citizen of Nigeria and, at all times relevant to this indictment, resided in and around Kalamazoo and Portage, Michigan, within the Western District of Michigan.  FATAI OKUNOLA was the registered owner of an entity known as Fatjas Import and Export LLC, also known as Fataz Import and Export LLC, Battle Creek, Michigan.  He also registered and used the email address, Fatairemix1@gmail.com, at times relevant to this indictment.  FATAI OKUNOLA also used the alias "Kojo Badu Frank" and he was associated with and used the email address, kojobadufrank1@gmail.com.

2.      OLUWASEYI AYOBAMI ADEOLA is a naturalized United States citizen from Nigeria.  He obtained his naturalization certificate in Kalamazoo, Michigan, on September 16, 2016.  During times relevant to this indictment, he resided in and around Battle Creek, Michigan, and was the registered owner of an entity known as Shyons Auto in Battle Creek, Michigan.  He also registered and used the email address, pshyon@yahoo.com, at times relevant to this indictment.

3.      IJEOMA OMOLOLA ADEOLA is a citizen of Nigeria and the wife of OLUWASEYI AYOBAMI ADEOLA.  During times relevant to this indictment, she resided in and around Battle Creek, Michigan, and was the registered owner of an entity known as Lola-Adeola Jewelries in Battle Creek, Michigan.  She also registered and used the email address, omololaphlex@yahoo.com, at times relevant to this indictment.

4.      CORY MCDOUGAL is a United States citizen who, at times relevant to this indictment, lived in and around Kalamazoo, Michigan.

2

5.      Ping Express US LLC (Ping Express) was a money transmitting business located in Dallas, Texas, that regularly assisted individuals with transmitting money from the United States to Nigeria.

6.      Defendants opened and controlled bank accounts at financial institutions within the Western District of Michigan, and elsewhere, to receive funds from the victims of their mail and wire fraud conspiracy.  After receiving those funds, defendants used the funds to pay personal and routine living expenses, transferred a portion of the fraud proceeds to one another to promote the fraud, and transported, transmitted and transferred the funds to their own accounts in Nigeria, and to unnamed co-conspirators overseas, mostly in Nigeria, to further promote the fraud and conceal the source, ownership and location of the fraud proceeds.

## OBJECT, MEANS AND METHODS

7.      The object of the conspiracy was to operate a mail and wire fraud scheme to obtain money under false pretenses from victims, many who were elderly or otherwise vulnerable, in order to personally benefit financially from the fraud and share the proceeds of the fraud with each other and co-conspirators known and unknown to the grand jury and living in Nigeria.

8.      Co-conspirators located outside of the United States, mostly in Nigeria and other parts of Africa, searched social media, the internet and other computer-based platforms to find potential victims, many of them vulnerable due to age, loss of a family member or other circumstances.

9.      The co-conspirators created false online personas.  They used those personas to approach their victims over the internet, through social media, by text messages, or by telephone and develop relationships with them.  These relationships centered around romantic interests,

offers to buy or sell goods or services, apartment rentals, or offers to make loans or provide grant funding, among other schemes.

10.    After contacting these victims, the unnamed co-conspirators sent pictures or provided other information to the victims by text messages or emails to make their scheme appear genuine.  On many occasions, the co-conspirators engaged in phone conversations with the victims.  Those phone calls typically occurred using voice-over-internet-protocol (VOIP) technology to make it appear that the telephone calls originated from area codes within the United States.

11.    Eventually, the co-conspirators requested that the victims give them money for some reason related to the scheme to defraud.  For example, in a romance scheme, the co-conspirator told the victim that he needed money to pay expenses related to a construction project, and that as soon as the victim provided the money, the co-conspirator would travel to the United States to meet with her and continue the romantic relationship.

12.    The conspirators obtained the victims' money in many different ways, including through the use of the mail or by causing others to use the mail in furtherance of the scheme.  On many occasions, the co-conspirators directed the victims to send their money to the defendants through the U.S. Postal Service or commercial carriers in the form of cash, U.S. Postal Money Orders and other commercial money orders, including Western Union, MoneyGram and others. These money orders were mailed by the victims to defendants' residences or to Post Office Boxes established by defendants in their names, alias names, or the names of "shell" companies that they created to make it appear that they were engaging in legitimate financial transactions. On other occasions, the victims were directed to deposit money directly into defendants' bank accounts, to wire funds directly from their bank to defendants' banks, or to transfer money from

their bank to defendants' banks via Zelle, a peer-to-peer transfer platform utilizing the automated clearinghouse electronic funds transfer of the banking system.

13.    The defendants acted as "money mules" to move the money to each other, other co-conspirators in the United States, and to their co-conspirators outside the United States, predominantly in Nigeria.  Defendants were critical to the success of the conspiracy because they opened and maintained bank accounts at financial institutions inside the United States in their own names and the names of their "shell" companies to accept the transfer of money from the defrauded victims.  After receiving the funds in their bank accounts, defendants used these financial institutions or money-transmitting businesses like Zelle, CashApp, Ping Express, and others, to transfer money to each other and to the co-conspirators through financial institutions inside and outside the United States.

14.    In furtherance of the conspiracy, defendants or their co-conspirators transmitted or caused to be transmitted wire communications in interstate and foreign commerce for the purpose of executing the scheme, including emails, text messages, VOIP phone calls, transfers of money between banks using wire transmissions and the movement of money over the wires through money transmitting platforms including Ping Express, Zelle, Square, Wave, and other use of the internet.

15.    In furtherance of the conspiracy and to accomplish its objects, from at least 2015 until the present, FATAI OKUNOLA, OLUWASEYI AYOBAMI ADEOLA, IJEOMA OMOLOLA ADEOLA, and CORY MCDOUGAL knowingly, and with intent to defraud, participated in a scheme to defraud and took steps in the Western District of Michigan, and elsewhere, that included, among others, the following:

5

**VICTIM A.S.**

16.     On or about September 29, 2015, victim A.S., an individual residing in Illinois, listed a queen bed for sale for $650.00 on a website, Sulekha.com.  A co-conspirator using the name "Gaurav Dewan" and using email address gauravdewan04@gmail.com responded to the advertisement and indicated his willingness to purchase the bed for the listed price.  Records from Google confirmed that gauravdewan04@gmail.com was associated with an internet protocol (IP) address originating in Africa.  A.S. communicated with this co-conspirator primarily by using his email address from his home in Illinois.

17.     This co-conspirator indicated that he would send A.S. a check for $2,000.00 because his employer issued him a lump-sum check for moving expenses.  The co-conspirator asked A.S. to deposit the check into his own bank account, keep the $650 sales price, and give the remaining $1,350.00 to OLUWASEYI AYOBAMI ADEOLA, an individual that would be picking up the bed and moving his belongings.

18.     On or about October 5, 2015, the co-conspirator posing as Gaurav Dewan sent the $2,000 check to A.S. via Federal Express.  A.S. deposited the check into his bank account.

19.     On or about October 7, 2015, Gaurav Dewan instructed A.S. to send the overage of $1,350.00 via Zelle to a Bank of America account in the name of OLUWASEYI AYOBAMI ADEOLA and linked to email address pshyon@yahoo.com.

20.     A.S. sent a Zelle transmission of the $1,350.00 to OLUWASEYI AYOBAMI ADEOLA as directed on October 7, 2015.  Shortly thereafter, Victim A.S. learned from his bank that the check from Gaurav Dewan was fraudulent and the funds were not truly deposited to his account.

## VICTIM A.G.

21.    On or about June 23, 2017, victim A.G., a resident of Texas, listed a sofa for sale for $100 on a website, Sulekha.com.  A co-conspirator using the name "Akarsh Sahil" and the email akarsh4440@gmail.com responded to the advertisement and indicated that he wanted to buy the sofa.  Records from Google establish that this email address is linked to Nigeria.  Victim A.G. communicated with Akarsh Sahil primarily using his email address from his home in Texas.

22.    Akarsh Sahil indicated to A.G. that he would send a check for $1,100.00, which included money for moving and shipping fees, and A.G. should deposit the check, keep the $100.00 sales price, and pay the movers with the balance.

23.    Akarsh Sahil sent the $1,100.00 check by United States Postal Service Priority Mail Express.  A.G. deposited the $1,100.00 check into his bank account and informed Akarsh Sahil.

24.    Akarsh Sahil then directed A.G. to send the remaining funds to IJEOMA OMOLOLA ADEOLA using a money transfer service of Walmart.  The next day, A.G. used a Walmart store in Texas to wire $950.00 across state lines to a Walmart Store in Battle Creek, Michigan, where  IJEOMA OMOLOLA ADEOLA obtained the funds.

25.    A.G. learned the next day that the check from Akarsh Sahil "bounced."  He lost $950.00 and was never able to reach Akarsh Sahil again.

## VICTIM J.T.

26.    Victim J.T.'s husband of twenty-six years died in 2011.  In February 2018, a co-conspirator using the name "Robert Johnson" befriended J.T. through a dating website,

7

Match.com.  He sent her several pictures of himself with his supposed banker, John Stephenson, using the email address rjohnson11884@gmail.com.  That email address was created with an IP address registered in Africa in 2017.  The co-conspirator posing as Robert Johnson claimed that he was from Holland, Michigan, but was working in Turin, Italy, on a construction project.  He told J.T. that while in Italy, his credit cards were locked causing problems with his construction project.  He asked her to send him money, said that he would make her a partner in the construction project, and promised to meet her when he returned to Michigan.

27.    J.T. primarily communicated with Robert Johnson by email from her home in the Western District of Michigan to the email address rjohnson11884@gmail.com.  At times, she also communicated with the co-conspirator posing as Robert Johnson on VOIP phone numbers he used, including a number with area code (616).  That area code is one commonly associated with Holland, Michigan, and made it appear to J.T. that Robert Johnson truly was from Holland.

28.    Using his email address, Robert Johnson told J.T. that he needed the money for construction materials for the project in Italy.  On May 31, 2018, the co-conspirator directed J.T. to send $10,000.00 to CORY MCDOUGAL and provided J.T. with directions and account information for CORY MCDOUGAL.  On that date, J.T. deposited $10,000.00 into CORY MCDOUGAL'S Chase Bank account ending in -0934 as directed.  On June 14, 2018, again after email communication with Robert Johnson, J.T. deposited an additional cashier's check in the amount of $8,000 into the same bank account for CORY MCDOUGAL.

29.    On June 1, 2018, and June 4, 2018, CORY MCDOUGAL deposited a total of $4,000 into the bank account of FATAI OKUNOLA at Fifth Third Bank ending in -1702 through two Zelle transactions of $2,000.00 each.  On June 4, 2018, FATAI OKUNOLA transferred

those funds from his Fifth Third bank account to Nigeria through Ping Express in three separate wire transactions in the amounts of $1,166.99, $1,821.99, and $1,821.99.

30.     On June 15, 2018, and June 18, 2018, CORY MCDOUGAL transferred an additional $7,150 in three separate Zelle transactions to FATAI OKUNOLA's same Fifth Third Bank account.  On June 15, 2018, and the days following the second Zelle transaction from CORY MCDOUGAL, FATAI OKUNOLA made the following wire transfers from his Fifth Third bank account to Nigeria via Ping Express:  $1,521.99 on June 15, 2018; $1,821.99 on June 19, 2018; and $1,721.99 on June 20, 2018.

31.     CORY MCDOUGAL withdrew approximately $7,800.00 of J.T.'s money in cash.

32.     Throughout 2018, Robert Johnson continued to make false representations to J.T. about the construction project and his promises of a romantic relationship.  As a result, victim J.T. transferred approximately $400,000 to individuals, including FATAI OKUNOLA and CORY MCDOUGAL, at the direction of the co-conspirator posing as Robert Johnson.  J.T. used her retirement savings, a HELOC, credit card loans, and earnings from her employment to send these funds to the co-conspirators.

### VICTIM J.L.

33.     Victim J.L. is a veteran of the United States military.  In April or May 2018, he was contacted on his cellular phone by a co-conspirator posing as "Amanda Contreas" and using phone number ending in -8829, a VOIP number tied to other complaints of wire fraud.  The co-conspirator told J.L. that as a veteran he was eligible for a financial grant through an organization called "IMF."  The co-conspirator told J.L. that a high school classmate of his, who she named, received the financial grant, which lent credibility to her story.  The co-conspirator posing as Amanda Contreas told J.L. that to receive the financial grant in the amount of approximately

9

$400,000, he would need to pay $20,000.00 up-front to cover payment of IRS taxes on the grant money he would receive.  She told J.L. that his high school classmate paid $10,000.00 for him, so he needed to pay the additional $10,000.00.  Victim J.L. liquidated a life insurance policy to raise his $10,000.00.

34.    The co-conspirator gave J.L. instructions to pay the $10,000.00 to FATAI OKUNOLA and provided payment instructions for FATAI OKUNOLA's Chase Bank account.

35.    On May 16, 2018, J.L. obtained a $10,000 cashier's check through RCB Bank and deposited the check into the Chase Bank account in the name of  FATAI OKUNOLA.  At that time, the balance of FATAI OKUNOLA's Chase Bank account was $723.89.

36.     On May 17, 2018 and May 22, 2018, FATAI OKUNOLA transferred $407.99 and $1,710.99 from his JP Morgan Chase Bank account to Nigeria through Ping Express. FATAI OKUNOLA also withdrew $3,000 in cash from his JP Morgan Chase Bank account on May 18, 2018, and an additional $3,400 in cash on May 21, 2018.

### VICTIM E.E.

37.    In January 2019, a co-conspirator using the name "Koti Constance Malia" began corresponding by email through the website Muslima with victim E.E., a 61-year old man who was a retired sergeant with the California Department of Corrections and previously divorced. Through promises of coming to the United States to be with E.E., this co-conspirator convinced E.E. to participate in a remote online marriage ceremony, allegedly from a mosque in Pretoria, South Africa.  Over the next few months, the co-conspirator posing as Koti Constance Malia communicated with E.E. through VOIP phone numbers and WhatsApp and told E.E. that he needed to send money to a man in Michigan who was the friend of a travel agent assisting her with traveling to the United States to be with him.

38.     In February, the co-conspirator directed E.E. to send money to OLUWASEYI AYOBAMI ADEOLA, the alleged owner of a car dealership in Battle Creek, Michigan, to pay her way to the United States.  In February and March 2019, victim E.E. sent $70,500 in five wire transactions from his credit union in California to OLUWASEYI AYOBAMI ADEOLA'S Huntington Bank account ending in -7000, in the name of Shyons Auto.  As of February 1, 2019, the Shyons Auto bank account had a balance of $934.54.

39.     On February 8, 2019, OLUWASEYI AYOBAMI ADEOLA used Ping Express to transfer $1,821.99 from his Huntington Bank account in the name Shyons Auto to Nigeria and an additional $1,136.99 to Nigeria via Ping Express on March 6, 2019.  On or about March 6, 2019, OLUWASEYI AYOBAMI ADEOLA transferred $7,000 from his Shyons Auto bank account at Huntington Bank to a joint bank account at Huntington Bank with his wife, IJEOMA OMOLOLA ADEOLA, ending in -5939.

40.     On or about March 21, 2019, OLUWASEYI AYOBAMI ADEOLA withdrew $54,826.13 in cash from the Shyons Auto account at Huntington Bank through a cashier's check made payable to himself.

41.     In 2019 and 2020, victim E.E. was defrauded of approximately $100,000.00 by the co-conspirator using the name "Koti Constance Malia."  E.E. obtained the money that he sent to OLUWASEYI AYOBAMI ADEOLA and other co-conspirators, from credit card advances, a HELOC, and cashing out a retirement annuity.

### VICTIM S.R.

42.     In May 2019, victim S.R., a reporter from New York, located an apartment in Cambridge, Massachusetts, listed for rent on Craigslist.com.  S.R. needed temporary housing in Cambridge for a summer job internship during June and July 2019.  A co-conspirator using the

11

name "Brandon Johnson" responded that he was subleasing the apartment owned by landlord

Patricia Williams while he was away for the summer.  The co-conspirator used the email

bjohnsoneva23@gmail.com and phone numbers ending in -0359 and -6280.  The email

bjohnsoneva23@gmail.com was associated with an IP address in Africa.  The phone numbers

used by the co-conspirator are VOIP numbers allowing the co-conspirator to use broadband

internet from anywhere in the world to make calls.

43.     After agreeing to a rental price of $2,300, the co-conspirator directed S.R. to send

the money via Zelle to the email address kojobadufrank1@gmail.com.  Before the money was

sent, the co-conspirator called S.R., claimed there was an issue with the

kojobadufrank1@gmail.com address and directed that she send the money via Zelle transfer to

the email address pshyon@yahoo.com.  That email address is registered to OLUWASEYI

AYOBAMI ADEOLA.

44.     On May 13, 2019, S.R. sent a Zelle transfer of $2,300 to the pshyon@yahoo.com

address.  The Zelle transfer was deposited into a Bank of America account in the name of

IJEOMA OMOLOLA ADEOLA, ending in -7300.  S.R. never heard from "Brandon Johnson"

again and later learned from Cambridge authorities that the building was not owned by Patricia

Williams and no one named "Brandon Johnson" ever lived at that location.

45.     On May 17, 2019, victim S.R. emailed kojobadufrank1@gmail.com,

pshyon@yahoo.com, and bjohnsoneva23@mail.com the following:

Brandon, Patricia, whoever you are,

I know you've taken my money.  Unlucky for you, I'm in a line of work that I can easily
trace you online.  You have until 2PM today to send my money back to me by Zelle or I go to
the FBI and police with what I find.

46.     Later that day, May 17, 2019, "Kojo Frank," using kojobadufrank1@gmail.com, falsely responded:

What do you mean?  This is a ticketing agent company?

## VICTIM A.O.

47.     Victim A.O., an elderly female resident of Muskegon, Michigan, received a message through Facebook Messenger in March 2023 from a person named "Melissa."  The message requested assistance with paying medical bills.  A.O. had a good friend named Melissa from Germany, who she met when her now-deceased husband was stationed in Germany while in the United States Air Force.  The co-conspirator posing as Melissa asked A.O. to send $1,700 to her for the medical bills by mailing blank money orders to "Frank Kojo."

48.     Victim A.O. purchased two United States Postal Money Orders totaling $1,700 at a post office in Muskegon, Michigan.  As directed, A.O. mailed the blank money orders by United States Postal Service Priority Mail Express to "Frank Kojo" at PO Box 19216, Kalamazoo, Michigan.  That post-office box is registered to FATAI OKUNOLA.

49.     A.O. texted her friend Melissa on several occasions to tell her that she sent the money for her medical expenses but never received a response confirming that she received the money.

50.     Subsequent investigation determined that the two United States Postal Money Orders were used by an individual known to the grand jury and connected to FATAI OKUNOLA, to purchase a car from a business in Flint, Michigan.

## VICTIM C.D.

51.     Victim C.D. is an elderly widow who lives alone in Florida.  C.D. has been having a relationship with a co-conspirator posing as Luciano Rossi for nearly seven years by

way of text messages and telephone.  This co-conspirator directed her to send money to FATAI

OKUNOLA for a variety of reasons, including the alleged purchase of a car and antiques.

Between October 1, 2019, and November 15, 2023, C.D. wired over $126,700.00 from her bank

account in Florida to the following accounts:  A PNC Bank account of FATAI OKUNOLA in

the name of Fatjas Import and Export LLC;  a joint account of FATAI OKUNOLA and an

individual known to the grand jury at Advia Credit Union; and an account of FATAI

OKUNOLA in the name of his alias, Kojo Frank, at Wells Fargo Bank.

52.    As of September 30, 2023, the Fatjas Import and Export LLC account at PNC

Bank, ending in -2814, had a balance of $8.42.  C.D. sent $54,000.00 in six wire transmissions

from her bank account in Florida to the Fatjas Import and Export LLC account ending in -2814

in October 2023, and an additional $23,000.00 in November 2023, with the last transmission

occurring on November 15, 2023.

53.    On October 17, 2023, FATAI OKUNOLA withdrew $3,300.00 in cash from the

PNC account ending in -2814, and FATAI OKUNOLA and or others known or unknown to the

grand jury withdrew approximately another $6,400.00 in cash through automated-teller machine

(ATM) withdrawals in October 2023.

54.    As a result of the mail and wire fraud scheme, defendants received over

$2,000,000.00 in their bank accounts from January 3, 2017, until September 30, 2022, alone.

18 U.S.C. § 1349
18 U.S.C. § 1341
18 U.S.C. § 1343

## COUNT 2
(Unlawful Procurement of Naturalization)

The Grand Jury incorporates by reference paragraphs 1 to 20 of Count 1 as if fully set forth herein.

On or about April 11, 2016, in the Southern Division of the Western District of Michigan,

**OLUWASEYI AYOBAMI ADEOLA**,

defendant, knowingly procured and attempted to procure, contrary to law, his own naturalization as a United States citizen, by knowingly making a materially false statement in connection with his application for naturalization, which application was completed and mailed back to U.S. Citizenship and Immigration Services on or about April 18, 2016, from Battle Creek, Michigan. Specifically, defendant completed an N-400 Application for Naturalization and affirmed under penalty of perjury that the information contained in the application was true and correct.  In fact, as the defendant then and there knew, the defendant made a false and fraudulent statement in the application by answering "No" to question number 22 of Part 11 of the Application asking if he ever committed, assisted in committing, or attempted to commit, a crime or offense for which he had not been arrested.  As defendant then and there knew, he had been participating in the conspiracy to commit mail and wire fraud alleged in Count 1, or otherwise committing, or aiding and abetting others in the commission of, mail and wire fraud, including, but not limited to, the wire fraud against victim A.S.  Ultimately, the United States Department of Homeland Security, Citizenship and Immigration Service, approved defendant's naturalization application and he was naturalized at an oath ceremony on September 16, 2016, in Kalamazoo, Michigan, in the Southern Division of the Western District of Michigan.

18 U.S.C. § 1425(a)

15

## REVOCATION OF CITIZENSHIP

Upon defendant's conviction for unlawfully procuring his naturalization, in violation of 18 U.S.C. § 1425, as charged in Count 2, the Court shall thereupon revoke, set aside and declare void the final order admitting **OLUWASEYI AYOBAMI ADEOLA** to citizenship and shall declare the certificate of naturalization of **OLUWASEYI AYOBAMI ADEOLA** to be canceled. 8 U.S.C. § 1451(e)

## COUNT 3
(False Statement Relating to Naturalization)

The Grand Jury incorporates by reference paragraphs 1 to 46 of Count 1 as if fully set forth herein.

On or about August 26, 2020, in the Southern Division of the Western District of Michigan,

**FATAI OKUNOLA, a/k/a**
**Kojo Badu Frank,**

defendant, knowingly made a false statement under oath in a matter relating to, or under, or by virtue of any law of the United States relating to naturalization.  Specifically, when completing his N-400 Application for Naturalization he affirmed under penalty of perjury that the information contained in the application was true and correct.  In fact, as FATAI OKUNOLA then and there knew, he made a false and fraudulent statement in the application by answering "No" to question number 22 of Part 12 of the Application asking if he ever committed, assisted in committing, or attempted to commit, a crime or offense for which he had not been arrested. As defendant then and there knew, he committed the crimes or offenses of wire and mail fraud when he participated in the conspiracy to commit mail and wire fraud as alleged in Count 1 of this indictment, or otherwise committed, or aided and abetted others in the commission of, mail and wire fraud, including, but not limited to, the wire fraud against victims J.T. and J.L.

18 U.S.C. § 1015(a)

17

**FORFEITURE ALLEGATION**
(Conspiracy to Commit Mail and Wire Fraud)

The allegations contained above in Count 1 (conspiracy to commit mail and wire fraud),

are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures

pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the

violations of 18 U.S.C. §§ 1349, 1341 and 1343 set forth in Count 1, the defendants,

**FATAI OKUNOLA,**
**a/k/a Kojo Badu Frank,**
**OLUWASEYI AYOBAMI ADEOLA,**
**IJEOMA OMOLOLA ADEOLA, and**
**CORY MCDOUGAL,**
**a/k/a Cory Haywood,**

shall forfeit to the United States of America any property, real or personal, which constitutes or

is derived from proceeds traceable to the violation.  The property to be forfeited includes, but is

not limited to, the following:

1.      MONEY JUDGMENT:  A sum of money equal to at least $2,481,976.00, which

constitutes or is derived from proceeds traceable to the offense charged in the Indictment;

2.      SUBSTITUTE ASSETS:  If any of the property described above, as a result of

any act or omission of the defendant:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the court;

      d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without

difficulty.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)
18 U.S.C. § 1349
18 U.S.C. § 1341
18 U.S.C. § 1343

A TRUE BILL

_____
GRAND JURY FOREPERSON

MARK A. TOTTEN
United States Attorney

_____
RONALD M. STELLA
Assistant United States Attorney

19